FILED

2004 Nov-18  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LINDA A. FLETCHER,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **CV-03-JHH-2465-S** |
| **JEFFERSON COUNTY BOARD OF EDUCATION,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

## MEMORANDUM OF DECISION

The court has before it defendant's September 15, 2004 motion for summary judgment. Pursuant to the September 23, 2004 and October 5, 2004 orders and the filing of documents described therein, the motion for summary judgment came under submission on October 28, 2004, without oral argument.

### I.  PROCEDURAL HISTORY

Plaintiff Linda A. Fletcher ("Fletcher"), an enlisted member of the United States Army, commenced this action on September 5, 2003 seeking damages after defendant, Jefferson County

Board of Education (the "Board"), did not renew her employment as a cafeteria worker.[1] Defendant filed its answer on October 6, 2003.

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendant submitted evidence[2] in support of its motion for summary judgment on September 30, 2004. It filed a supporting brief on October 14, 2004. On October 14, 2004, plaintiff submitted evidence[3] in opposition to defendant's motion for summary judgment. She filed an opposition brief on October 28, 2004. On November 5, 2004, defendant filed a short reply brief.

## II. Standards for Evaluating a Summary Judgment Motion

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[1] Plaintiff initially styled this lawsuit against the Board and Jerry Mitchell, the Deputy Superintendent of Instructional Services for the Board. The first complaint consisted of two counts relating to 38 U.S.C. § 4301 et. seq. (Uniformed Services Employment and Re-employment Rights Act) which are collectively sometimes referred to as "the USERRA claim." Plaintiff amended her complaint to add Count III under ALA. CODE § 31-2-13 (1975) (Military Leave of Absence). On November 3, 2004, the court granted plaintiff's motions to dismiss the claims against Jerry Mitchell [Doc. # 38-1] and to dismiss the claims arising under ALA. CODE § 31-2-13 [Doc. # 37-1]. Therefore, the USERRA claim against the Board is the only claim remaining for adjudication.

[2] Defendant submitted: deposition of plaintiff with attached exhibits; deposition of Jerry Mitchell; deposition of Elizabeth Jane Baker; affidavit of Jerry Mitchell with attached exhibits; affidavit of Jane Baker with attached exhibits; affidavit of Brenda Horsley with attached exhibits; and affidavit of Kim McPherson with attached exhibits.

[3] Plaintiff submitted: affidavit of Linda Fletcher; and "the evidentiary materials previously flied [sic] by the defendants in support of their Motion for Summary Judgment." On November 3, 2004, this court ruled on defendants' (Jerry Mitchell was still a named defendant at that time) motion to strike the affidavit of Linda Fletcher by striking paragraph 6 as containing inadmissible hearsay and paragraph 7 for containing information lacking personal knowledge.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman, 229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence

3

demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence

4

of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III.  Relevant Undisputed Facts[4]

In October 2000, defendant hired plaintiff to work as a substitute cafeteria worker.  (See Fletcher Depo. at 24-26.)  Soon after, plaintiff applied for a full time position and was interviewed by Brenda Horsley.  (See id. at 25; Horsley Aff. at ¶ 2.)  Plaintiff's application stated that she was serving in the Alabama National Guard ("National Guard").[5]  (See Mitchell Aff., Ex. B.)  In January 2001, defendant hired plaintiff on a full time basis as a cafeteria worker at Shades Valley High School ("Shades Valley") in Birmingham, Alabama.  (See Fletcher Depo. at 21-26.)  Plaintiff's employment in this position was for the nine month school year and her continuing employment for successive nine month school years depended on the Board's renewal decision at the end of each school year.  Her last renewal was for the 2002-03 school year.

In November 2002, plaintiff requested, and was granted military leave for a voluntary extended deployment.  (See Fletcher Depo. at 34-35.)  Plaintiff was given leave prior to the deployment to get her personal affairs in order.  (See Horsley Aff. at ¶ 3.)  Approximately two weeks into this service, plaintiff's orders were rescinded, and shortly thereafter, she returned to work.  (See Fletcher Depo. at 35.)  Upon her return, Brenda Horsley, plaintiff's supervisor, stated that "we needed you here."  (See id. at 36; Fletcher Aff. at ¶ 5.)

---

[4]  If the facts are in dispute, they are stated in the manner most favorable to plaintiff, as the non-moving party.  See Fitzpatrick, 2 F.3d at 1115.

[5]  Plaintiff served as a cook in the National Guard.  (See Fletcher Depo. at 28.)

Each non-tenured nine month employee was evaluated three times during the 2002-03 school year.  (See Baker Depo. at 12.)  Shades Valley conducted three rounds of plaintiff's job performance assessments in Spring 2003.  (See Fletcher Depo. at 52; Baker Aff. at ¶ 3-4, Ex. A.) Shades Valley Assistant Principal, John Moore, evaluated plaintiff on March 3, 2003 and identified problems with her productivity and interaction with Horsley.  (See Baker Depo. at 22-24; Baker Aff., Ex. A.)  Moore personally reported the existence of problems between Horsley and plaintiff to Shades Valley's principal, Elizabeth Jane Baker.  (See id.)  Horsley evaluated plaintiff on April 9, 2003 and April 30, 2003 noting several instances of sub-standard behavior:

> Other employees are constantly asking where the help is.
> ...
> Employee does not complete work assignment in amount of time given.
> ...
> During meeting when I try to address problems without being specific, she is usually argumentative.
> ...
> Uses cell phone in kitchen, while serving food.

(See Horsley Aff., Ex. A.)[6]

In April 2003, plaintiff again requested, and was granted two weeks leave to attend annual National Guard training in Birmingham, Alabama.  (See Fletcher Depo. at 38, 56.)  After receiving orders from the Army, plaintiff's sergeant informed her that training started on May 2,

---

[6]  Plaintiff disagrees with each of Horsley's notations.  (See Fletcher Aff. at ¶¶ 8-12.) Plaintiff states (1) that these characterizations are not true because no one, particularly Horsley, brought the issues to plaintiff's attention and (2) she was never issued a disciplinary citation for these actions.  (See id.)  Plaintiff states that she "rarely left the work area during service hours," (See id. at ¶ 9,) "rarely, if ever, used my cell phone at work" (See id. at ¶ 11,) and "the only task I remember completing late was on one occasion when I made strawberry shortcake."  (See id. at ¶ 10.)  As to her argumentative reaction to criticism, plaintiff states "I am in the military.  I do not have any problems following orders or respecting authority."  (See id. at ¶ 12.)

2003, which was one day earlier than planned.  (See id. at 39.)  Plaintiff was excused from work this extra day.  (See id. at 57.)

On April 25, 2003, Baker recommended not to renew plaintiff's employment based on the evaluations of Horsley and Moore.[7]  (See Baker Depo. at 30-32; Baker Aff. at ¶ 5.)  As principal, Baker made renewal decisions near the end of each school year.  (See id. at 13.)  She forwarded her recommendation to the Board's central office.  (See id.)  Deputy Superintendent of Instructional Services for the Board, Jerry Mitchell, received Baker's recommendation.  (See Mitchell Depo. at 8-9.)  Mitchell passed the recommendation to the superintendent.  (See id. at 11.)  The Board voted not to renew plaintiff's employment and sent plaintiff a notice to this effect on May 8, 2003.  (See Mitchell Aff., Ex. A.)

Plaintiff attended annual training from May 2, 2003 until May 17, 2003.  (See id. at 57.)  Thus, at the time the notice was sent on May 8, 2003, plaintiff was at the training.   On May 18, 2003, not yet aware of the non-renewal decision, plaintiff returned to work until the end of the school year, which was May 21, 2003.  (See id. at 56.)  Upon checking her mail on May 22, 2003, plaintiff received the notice that her employment with defendant was not being renewed.  (See id.)

_____

[7]  Principal Baker stated that "[o]n or about April 29, 2003, I became aware that Ms. Fletcher would be attending her annual training for the Alabama National Guard because Linda Ball, payroll assistant at Shades Valley, received a copy of Ms. Fletcher's orders via facsimile from the Alabama National Guard on April 29, 2003. ... Even though I was aware that Ms. Fletcher was a member of the Alabama National Guard prior to receiving notice of said annual training, when I made my non-renewal recommendation on April 25, 2003, I was not aware that she would be attending annual training in May, 2003... ."  (See Baker Aff. at ¶ 7.)

**IV. Applicable Substantive Law and Analysis**

The pertinent provisions of the Uniformed Services Employment and Re-employment

Rights Act ("USERRA") provide that:

> (a) A person who is a member of ... a uniformed service shall not be denied ... any benefit of employment[8] by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
>
> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter....
>
> (c) An employer shall be considered to have engaged in actions prohibited--
>    (1) under subsection (a), if the person's membership ... is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or
>    (2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

See 38 U.S.C. § 4311.

A cause of action under USERRA follows the NLRB v. Transp. Management Corp., 462

U.S. 393, 401 (1983) burden-shifting framework. See Harris v. City of Montgomery, 322

---

[8]   A denial of a "benefit of employment" is an essential element to a USERRA cause of action. A "benefit of employment" is defined as "any advantage, profit, privilege, gain, status, [or] account ... that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes ... vacations, and the opportunity to select work hours or location of employment." See 38 U.S.C. § 4303(2). Since neither party contends that plaintiff was not denied a "benefit of employment," the court will not further address this issue.

F.Supp. 2d 1319, 1325 (M.D. Ala. 2004) (citing <u>Sanguinetti v. United Postal Serv.</u>, 114

F.Supp.2d 1313 (S.D. Fla. 2000), <u>aff'd</u>, 254 F.3d 75 (11th Cir. 2001) (table)).  This method

provides for three phases of proof at trial:

> First, the ... [plaintiff] must show by a preponderance of the evidence that ... [military status] was a motivating factor in the employer's decision to discharge an employee.
>
> [Second,] [s]uch a showing establishes ... [a] violation unless the employer can show as an affirmative defense that it would have discharged the employee for a legitimate reason regardless of the ... [plaintiff's military status].
>
> [Third,] ... [plaintiff] may then offer evidence that the employer's proffered 'legitimate' explanation is pretextual – that the reason either did not exist or was not in fact relied upon – and thereby conclusively restore the inference of unlawful motivation.

<u>Id.</u> (citing <u>NLRB v. McClain of Georgia, Inc.</u>, 138 F.3d 1418, 1424 (11th Cir. 1998)).

The aforementioned trial burdens are relevant to the court's summary judgment analysis

because the court "must view the evidence presented through the prism of the substantive

evidentiary burden." <u>Anderson</u>, 477 U.S. at 254-55.  This is true because the court must decide

whether a jury could reasonably find that military status <u>inter alia</u> was a motivating factor in the

decision not to renew plaintiff's employment.  In the words of Justice White, "[i]t makes no

sense to say that a jury could reasonably find for either party without some benchmark as to what

standards govern its deliberations and within what boundaries its ultimate decision must fall, and

these standards and boundaries are in fact provided by the applicable evidentiary standards."

<u>Anderson</u>, 477 U.S. at 254-55.  As such, the first inquiry is whether a <u>prima facie</u> case could be

established if this case were to go to trial.

9

*1. Discriminatory Motive*

Plaintiff's case will withstand defendant's motion for summary judgment if there is an issue of material fact whether military status was a motivating factor in defendant's decision not to renew plaintiff's employment.  It is well-established that a motivating factor under USERRA is "not necessarily the sole cause of action, but rather it is one of the factors that a truthful employer would list if asked for the reasons for its decision."  See Sanguinetti, 114 F.Supp.2d at 1318; Brandsasse v. City of Suffolk, Va., 72 F.Supp. 2d 608 (E.D. Va. 1999); see also Smith v. Sch. Bd. of Polk County, Fl., 205 F.Supp. 1308 (M.D. Fl. 2002) (holding that membership in the military is a motivating factor if employer relied on, took into account, considered, or conditioned its decision on that consideration).  The requisite discriminatory motive may be inferred from direct or circumstantial evidence including (1) proximity in time between the military service and the adverse employment action, (2) inconsistencies between the proffered reason and other actions of the employer, (3) employer's expressed hostility towards service members with knowledge of the employee's military activity and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses.  See Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001) (arising in context of circuit court reviewing administrative appeal).

Plaintiff's affidavit and brief lists several facts allegedly showing that "military service was a factor in the decision to end her employment rendering summary judgment improper." (See Pl.'s Mot. Summ. J.)  Plaintiff states that she was not reprimanded or criticized until she required military leave in 2003.  (See id.)  Plaintiff also argues that Horsley's statement "in a gruff tone that she had been needed at work" was a communication of disapproval of plaintiff's

military service.  (See id.)  Plaintiff makes the same argument regarding Principal Baker's statement that "[plaintiff's] attendance was good except for, you know, when she was on leave." (See id.)[9]  Finally, plaintiff makes several contentions based on the temporal proximity between plaintiff's military leave and the non-renewal decision.  (See id.)  More specifically, plaintiff states that she became aware that she would need leave "sometime between April 12 and 19, 2003" and Principal Baker recommended non-renewal in late April 2003.  (See id.)

        Although not binding precedent, this court finds several decisions instructive with respect to plaintiff's arguments.  In Harris v. City of Montgomery, the plaintiff was an Army reservist and also a head football coach for the City of Montgomery Parks and Recreation Department. 322 F.Supp.2d at 1321.  In early August 2002, the employee told his athletic director that he would be attending annual training in the near future.  Id.  Then, on August 22, 2002, the employee gave military orders to his supervisor in order apprize him of the exact training dates. Id.  Later that day, the athletic director told the employee that he would no longer serve as head football coach.  Id.  The employee sued under USERRA and the city moved for summary judgment.  Id.  The employee came forward with evidence that his supervisor recommended a merit increase in a memorandum three days before sharply criticizing him in a second memorandum.  Id. at 1322.  The second memorandum stated that the employee "fail[ed] to submit request for leave/submit military leave orders in a timely manner."  Id.  The court denied the employer's motion for summary judgment because it was undisputed that the Athletic Superintendent said the employee's military status played a "major role" in the decision to

---

    [9]  Poor attendance was not a reason given for plaintiff's non-renewal.

remove him from head coach, in addition to the fact that the employee was informed he was no longer head coach the same day he presented his training schedule. Id. at 1325.

In Sanguinetti v. United Parcel Service, the plaintiff was a delivery driver for UPS when he reenlisted in the Marine Corps, requiring attendance at an eight-month training school. 114 F.Supp.2d at 1315. To no avail, the employee and his supervisor attempted to have the orders changed. Id. Meanwhile, the employee violated UPS policy by engaging in a relationship with a female co-worker. Id. The employee ended the relationship to return to his wife and children. Id. The employee disclosed the relationship to UPS management and they investigated the facts surrounding the relationship. Id. Management gave the employee the option of resignation or termination. Id. This prompted the employee to sue under Title VII and USERRA. Id. at 1314. The court granted the employer summary judgment because the only evidence presented regarding the USERRA claim was that the supervisor made efforts to relieve or postpone the employee's military orders. Id. at 1318. The court held that a prima facie USERRA claim could not be established under that evidence, but even if it could, the employer established an affirmative defense by showing that it would have fired the employee for violating the no-dating rule. Id. at 1319 n6.

Finally, in Smith v. School Board of Polk County, Florida, the plaintiff was an interim high school principal and an Air Force reservist. 205 F.Supp.2d at 1310. When the employee was on military leave, the school superintendent stated to an assistant principal that "[plaintiff] was going to have to make up his mind as to whether he wanted to be a principal or a soldier." Id. at 1311. Following a bench trial, the court found that this evidence was sufficient for the

12

employee to create a <u>prima</u> <u>facie</u> case regarding that school year.  <u>Id.</u> at 1315.[10]  On the other

hand, the employee did not have similar evidence regarding the following school year, and

therefore, the court found that he could not establish that military service was a motivating factor

regarding that year.  <u>Id.</u> at 1315-16.

In the case <u>sub</u> <u>judice</u>, plaintiff argues that the temporal sequence of events, Horsley's

inconsistent opinions of plaintiff and a statement plaintiff characterizes as hostile towards her

military service would be sufficient for a reasonable jury to infer a discriminatory motive.

Plaintiff's legal argument specifically emphasizes the importance timing played in the <u>Harris</u>

decision.  However, unlike <u>Harris</u>, plaintiff does not come forward with evidence to cast doubt

that the proximity of her non-renewal to the military leave was anything but coincidental.

Moreover, plaintiff fails to present other evidence for the court to extrapolate discriminatory

animus.

Principal Baker recommended non-renewal on April 25, 2003 based on the evaluations of

Moore and Horsley made March 3, 2003 and April 9, 2003, respectively.[11]  Plaintiff states that

she informed her supervisor of annual training "sometime between April 12 and 19, 2003."  (<u>See</u>

Pl.'s Mot. Summ. J.)  Thus, Moore and Horsley were not aware that plaintiff would need time off

when they gave her negative reviews.  Likewise, Principal Baker was not aware of plaintiff's

annual training as of April 25, 2003 when she made the non-renewal recommendation.

---

[10]  Although the employee created a <u>prima</u> <u>facie</u> case, the employer established that it
would have made the same decision in the absence of consideration of plaintiff's membership in
the Air Force reserves.

[11]  The court deduces that Principal Baker did not rely on the April 30, 2003 evaluation
since she recommended non-renewal on April 25, 2003.

More importantly, all employees up for tenure were being evaluated in Spring 2003.[12] This makes perfect sense as the end of the school year was approaching and defendant had to decide who should return to work the following school year.  Several non-tenured employees, including plaintiff, would be eligible for tenure if their employment was renewed for the following year.  As any taxpayer would expect, the importance of evaluating employees is greatest in the year preceding tenure eligibility.  Plaintiff's argument requires the court to overlook undisputed evidence that on April 25, 2003 Principal Baker signed a list that had "Retain" or "Not Retain" marked next to the name of all non-tenured employees.[13]  (See Baker Aff., Ex. B.)  Although plaintiff argues that the timing of events suggests a covert effort to eliminate her, the evidence actually indicates that the decision not to renew plaintiff's employment would have been made at roughly the same time under any facts.  Certainly no inference favorable to plaintiff can be made from the undisputed facts as defendant had to make a decision to renew or not renew because by default non-renewal would occur.

---

[12]  Plaintiff was on "probationary status" for three years from January 22, 2001.  (See Mitchell Aff, Ex. C.)

[13]  Five of the twenty-four non-tenured employees on the list had "Not Renew" checked next to their name, and four of these individuals were teachers.  Under ALA. CODE § 16-24-12: "Reemployment for succeeding school year: [a]ny teacher in the public schools ... shall be deemed offered reemployment for the succeeding school year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed ..."  The Teachers Tenure Act intends to secure continuing service for the succeeding year unless given written notice to the contrary under direction of the board not later than the first of May.  See Baugh v. Bd. of Educ., 14 So. 2d 508 (Ala. 1943).  Although the act only applies to teachers, Principal Baker made the renewal decision for teachers at the same time as cafeteria workers, janitors and assistant instructors.  It appears that defendant was acting within the window of time it was given to make renewal decisions for all non-tenured employees.

14

Plaintiff also argues that a jury could infer discrimination from Horsley's inconsistent opinions of plaintiff's performance, which was also an important consideration in <u>Harris</u>. However, the employer in <u>Harris</u> made a negative evaluation just three days after making a positive evaluation.[14]  In this case, Horsley orally praised plaintiff in November 2002 and changed her opinion approximately five months later in April 2003.  The substantial time between Horsley's change of heart is quite different from the three days in <u>Harris</u>.  This timeline is consistent with the evidence that plaintiff's performance declined in Spring 2003.

As is discussed above in Footnote 6, plaintiff also attempts to create an issue of fact concerning the evaluations by way of her own affidavit.  Conclusory, self-serving or uncorroborated allegations in an affidavit cannot create an issue of fact sufficient to defeat a well supported summary judgment.  <u>See</u> <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990).  Plaintiff's affidavit attempts to do just this.  Plaintiff offers no evidence other than her conclusory, self-serving and uncorroborated statements that her evaluators' observations were baseless.

Finally, plaintiff characterizes Horsley's "gruff" statement that "we needed you here" as derogatory towards plaintiff's military service.  The court simply cannot see how discriminatory

---

[14]  In <u>Harris</u>, the court noted that "[t]he two memoranda are so different from one another that it is hard to imagine that they were written by the same person.  Peculiarly, none of the parties explains what, if anything, happened in those three days to cause [the evaluator] to change his position so drastically."  322 F.Supp.2d at 1326-27.

Horsley's praise of plaintiff was manifested in a comment during an informal conversation.  Defendant gives the explanation that plaintiff's decline in performance prompted Horsley's change.

motive would be derived from these words.[15]  This statement has several innocent meanings unlike the statements relied upon by the <u>Smith</u>[16] or <u>Harris</u>[17] courts.  Moreover, the negative connotations of those statements were corroborated by testimony other than the plaintiff's.  Moreover, Horsley's statement was not made in reference to plaintiff's second request for military leave and it was made months before evaluating plaintiff's performance.

Plaintiff's case requires the court to make a leap it is unable to make based on the evidence presented.  Considering the facts in the light most favorable to plaintiff, the court concludes that she has not come forward with evidence from which a reasonable jury could infer the requisite discriminatory motive to establish a <u>prima facie</u> claim under 38 U.S.C. § 4311(a) as well as (b).  Plaintiff has failed to create a genuine issue of any material fact regarding military status motivating the non-renewal decision.  For these reasons, defendant's motion for summary judgment on plaintiff's Uniformed Services Employment and Re-employment Rights Act claim is due to be granted.[18]

---

[15]  The <u>Barreto v. ITT World Directories</u>, 62 F.Supp.2d 387, 392 (D. P.R. 1999) court did not find a discriminatory motive when the employer asked an employee to postpone military leave because the employees absence would be inconvenient.  The court specifically stated that this inquiry "bears no discriminatory animus."  <u>Id.</u>

[16]  "Plaintiff was going to have to make up his mind as to whether he wanted to be a principal or a soldier."  205 F.Supp.2d at 1311.

[17]  "Coach Harris' military training played a role in that decision process."  322 F.Supp.2d at 1325.

[18]  Assuming <u>arguendo</u> that plaintiff survived summary judgment as to the <u>prima facie</u> discriminatory motive element, plaintiff's claim would otherwise fail because the evidence does not create a doubt that defendant's reasonable, non-discriminatory reasons for non-renewal were not pretextual.

A separate final order consistent with this memorandum of decision will be entered.

DONE this 18 day of November 2004.

_James H. Hancock_

SENIOR UNITED STATES DISTRICT JUDGE